UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VESTA HARVEY, as Surviving Spouse of LEONARD HARVEY, Deceased,<br><br>        Petitioner,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>        Respondent. | Case No. 1:10-cv-00408-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Vesta Harvey's, as surviving spouse of Leonard Harvey, Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed on November 23, 2010. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Claimant Leonard Harvey filed an application for Disability Insurance Benefits and Supplemental Security Income on June 11, 2007. This application was denied initially and on reconsideration, and a hearing was held on July 24, 2009, before Administrative Law Judge ("ALJ") Michael A. Kilroy. ALJ Kilroy heard testimony from Claimant Leonard Harvey and vocational expert Anne Aastum. ALJ Kilroy issued a decision finding Mr. Harvey not disabled on November 24, 2009, and he timely requested review by the Appeals Council, which denied the request for review on June 18, 2010.

Following Mr. Harvey's death, his wife Vesta Harvey appealed this final decision to the Court.[1] The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Mr. Harvey was 62 years of age. He completed high school, six years of vocational training in electronics, and two semesters of college course work. His prior work experience includes work as a customer service representative and computer hardware fabricator and inspector.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must

---

[1] Vesta Harvey, as the surviving spouse, is permitted to maintain this appeal. *See Sousa v. Callahan*, 143 F.3d 1240 (9th Cir. 1998) (wherein the surviving spouse filed an appeal after the claimant's death).

be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Mr. Harvey had engaged in substantial gainful activity since his alleged onset date, which was therefore amended to September 1, 2007. After amending the alleged onset date, the ALJ found that Mr. Harvey had not engaged in substantial gainful activity. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Mr. Harvey's ruptured disk at L3-4 with nerve root impingement and associated quadriceps weakness; spondylitic lumbar spine disease; history of deep vein thrombosis; asthma; joint pain of the shoulder; and obesity severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Mr. Harvey's impairments did not meet or equal the criteria for a listed impairments, specifically Listing section 1.04, which pertains to musculoskeletal impairments.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Mr. Harvey retained the RFC to perform his past relevant work as a customer service representative. The ALJ therefore did not proceed to step five.

**MEMORANDUM DECISION AND ORDER - 3**

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552,

**MEMORANDUM DECISION AND ORDER - 4**

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**MEMORANDUM DECISION AND ORDER - 5**

### DISCUSSION

Petitioner believes the ALJ erred at steps three and four. Mrs. Harvey argues that her husband met the requirements of listing section 1.04(C) based upon his ruptured disk at L3-4 with nerve root impingement and spondylitic lumbar spine disease, coupled with his inability to ambulate effectively. Next, Petitioner contends that the ALJ erred in finding Mr. Harvey not credible with respect to his testimony about the severity, persistence, and limiting effects of his pain. Petitioner further asserts that the ALJ erred by improperly rejecting the opinions of treating physician Dr. Hanson and accepting the RFC analysis of a state agency medical examiner. Therefore, Petitioner asserts that the ALJ's RFC assessment is wrong, and does not support the ALJ's finding that Mr. Harvey was capable of performing his past relevant work as a customer service representative. In addition, Petitioner argues that the ALJ improperly relied upon a consultative examination from August of 2007, which was performed before Mr. Harvey's amended onset date of September 1, 2007, to support the ALJ's finding that Mr. Harvey had the requisite mental capacity to perform his past relevant work.

Respondent disputes Petitioner's arguments, contending that nothing in the record indicated Mr. Harvey was unable to ambulate effectively, and that Mr. Harvey's daily activities supported the ALJ's credibility finding. In addition, the Respondent argues that the ALJ presented specific and legitimate reasons in support of the findings rejecting Dr. Hanson's RFC analysis. And finally, Respondent contends that the ALJ's RFC findings

**MEMORANDUM DECISION AND ORDER - 6**

are supported by substantial evidence in the record, and therefore support the finding that

Mr. Harvey could perform his past relevant work as a customer service representative.

**1.      Listing Criteria**

The ALJ found that Mr. Harvey's impairments did not meet or equal any listing.

Specifically, the ALJ found that Mr. Harvey's impairments did not meet or equal Listing

1.04 regarding musculoskeletal impairments.

Listing 1.04(C) states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,
> facet arthritis, vertebral fracture), resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord.
> With:
> C. Lumbar spinal stenosis resulting in pseudoclaudication established by
> findings on appropriate medically acceptable imaging, manifested by
> chronic nonradicular pain and weakness, and resulting in inability to
> ambulate effectively as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, §1.04(C).  Further, inability to ambulate effectively is defined

as:

> Inability to ambulate effectively means an extreme limitation of the ability
> to walk; i.e. an impairment(s) that interferes very seriously with the
> individual's ability to independently initiate, sustain, or complete activities.
> Ineffective ambulation is defined generally as having sufficient lower
> extremity functioning to permit independent ambulation with the use of a
> hand-held assistive device(s) that limits the functioning of both upper
> extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, §1.00B2b.

If the claimant satisfies the criteria under a listing <u>and</u> meets the twelve month

duration requirement, the Commissioner must find the claimant disabled without

**MEMORANDUM DECISION AND ORDER - 7**

considering age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence establishing all of the requisite medical findings that his impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or otherwise, as to how his combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

Petitioner first contends that the record established Mr. Harvey could not ambulate effectively, because his shoulder impairment prevented the use of an assistive device that limited the functioning of both extremities. Petitioner's argument rests on the assumption that, if Mr. Harvey had full functioning of both upper extremities, he would have used either two canes or a walker.

However, the record does not indicate that Mr. Harvey required the use of two canes or any other assistive device that limited the functioning of both upper extremities. After Mr. Harvey's hospitalization in August and September of 2007 for his herniated disk, the record established that his physical therapy training involved the use of one cane, and Mr. Harvey consistently reported to his physical therapist that his ability to walk was improving with therapy. (AR 392.) In addition, Mr. Harvey reported on November 6, 2007, that he only was using the cane outdoors walking on uneven surfaces. (AR 383.) The goal for Mr. Harvey's physical therapy was to actually eliminate the use of an

**MEMORANDUM DECISION AND ORDER - 8**

assistive device. (AR 437.) Thus, there is no evidence in the record to support Petitioner's assumption that Mr. Harvey would have used two canes or a walker if his shoulder was fully functioning.

Petitioner next argues that documented falls by Mr. Harvey on November 19, 2007, November 28, 2007, February 21, 2008, and September 27, 2009, support the conclusion that Mr. Harvey could not ambulate effectively. There is evidence in the record indicating Mr. Harvey's herniated disk caused left leg weakness and that, on occasion, it would fail to bear his weight. But the record does not demonstrate support for Petitioner's argument. Both Mr. Harvey's physical therapist and his treating physician indicated that exercise and the use of one cane would prevent such falls. (*See* AR 530 (encouraging Mr. Harvey to use the cane outside) and AR 514 (encouraging increased exercise to prevent falls)). Accordingly, the evidence supports the conclusion that Mr. Harvey's treating sources believed that, with the use of a cane and continued physical therapy, Mr. Harvey would and did have the ability to ambulate effectively.

Finally, Petitioner argues that the ALJ did not adequately explain the combined effects of Mr. Harvey's obesity with his other impairments, specifically his back problems and shortness of breath due to decreased pulmonary function caused by asthma. An ALJ is not required, however, to discuss the combined effects of Mr. Harvey's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th

**MEMORANDUM DECISION AND ORDER - 9**

Cir. 2005.) Petitioner therefore bears the burden of proving that the record supports a finding that the combined effects of Mr. Harvey's impairments establishes equivalency, in this case the inability to ambulate effectively.

The record as a whole does not demonstrate such a finding. Mr. Hervey's pulmonary function study, performed on September 25, 2007, did indicate a loss of pulmonary function. (AR 358--364.) However, the pulmonary study was performed because physicians detected a pulmonary embolism, which was treated with blood thinning drugs. (AR 385.) Although Mr. Harvey testified he became short of breath "just walking across the room," (AR 39), the medical records indicate that up until Mr. Harvey contracted pneumonia on October 9, 2009, Mr. Harvey did not complain of shortness of breath to any physician. (AR 547.) In addition, Mr. Harvey's medical records do not indicate that he complained of asthma symptoms inhibiting his functioning, and he was treated with an inhaler to control those symptoms. (AR 386.)

As for Mr. Harvey's obesity, the ALJ considered the effects of his obesity and found that it did not combine with his back problems to meet the requirement of Listing 1.04. The ALJ specifically discussed that, although Mr. Harvey's obesity was severe, he required only the use of one cane to ambulate effectively. Therefore, the ALJ concluded that the listing requirements were not met. (AR 14–15.) There was no evidence in the record stating that Mr. Harvey's obesity limited his functioning, and no treatment notes addressed his limitations due to obesity. On appeal, Petitioner has not pointed to any

**MEMORANDUM DECISION AND ORDER - 10**

evidence of functional limitations due to Mr. Harvey's obesity which would have impacted the ALJ's analysis, other than stating that he was obese and thereby implying that it should contribute to his back pain. But the only evidence in the record relating to Mr. Harvey's obesity were progress notes documenting his weight, and indicating he was obese.

Based upon all of the above, the Court concludes that the ALJ did not commit error by inadequately considering Mr. Harvey''s obesity, his other ailments in combination with his back condition, or his ability to ambulate effectively. Therefore, the ALJ correctly determined that Mr. Harvey did not meet or equal the requirements of Listing 1.04.

**2.      Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).  Unless there is affirmative

evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

**MEMORANDUM DECISION AND ORDER - 12**

A failure to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007).

In this case, the ALJ articulated adequate reasons for rejecting Mr. Harvey's pain testimony. Contrary to Petitioner's argument, the ALJ did not solely rely upon Mr. Harvey's function report, which he completed in July of 2007, prior to his amended onset date of September 1, 2007. Rather, the ALJ made specific findings to support his credibility determination.

In considering Mr. Harvey's testimony regarding his activities of daily living, the ALJ explained that his reports to his physicians and care providers contradicted his testimony at the hearing that he was incapacitated for most of the day. Mr. Harvey testified that his deep vein thrombosis required him to elevate his legs for several hours each day. However, Dr. Hansen, who treated Mr. Harvey's thrombosis, never suggested he do so in any of his progress notes. Instead, Mr. Harvey was prescribed compression stockings, and Dr. Hansen encouraged Mr. Harvey to continue exercising to improve his back after his September 2007 hospitalization for his disk herniation. (AR 514.)

In addition, treating neurosurgeon Dr. Reedy on October 30, 2007, was of the opinion that Mr. Harvey "needs to get off his butt and get moving," particularly to "start working that left leg more," and that he was "limiting his own potential for improvement

**MEMORANDUM DECISION AND ORDER - 13**

by sitting around and not really doing much." (AR 376.) Considering Mr. Harvey's physicians were aware of his history of deep vein thrombosis, such medical advice clearly does not support Petitioner's testimony that Mr. Harvey was either instructed or required to sit and elevate his legs for six hours each day. (*See* AR 40.)

The ALJ cited also Mr. Harvey's activities reported to his physical therapist after his hospitalization in September of 2007. Mr. Harvey reported that he was working in the yard, going to "big stores," handling snow removal, and lifting a lawn mower out of the car. (AR 393, 500, 484.) Petitioner argues that Mr. Harvey injured himself performing those activities, contending his condition was fragile. (AR 11.) However, Mr. Harvey was engaged in physical therapy using resistance weights, strength training, and general aerobic conditioning precisely to strengthen his shoulder, leg, and back. (*See* AR 379–458.) Again, if Mr. Harvey's condition was that fragile, such exercises likely would have been contraindicated.

Based upon the clear, convincing and specific reasons for partially rejecting Mr. Harvey's pain testimony and the substantial evidence in the record to support the ALJ's determination, the Court concludes that the ALJ properly evaluated the testimony in finding Mr. Harvey not credible.

3.    **The ALJ's Residual Functional Capacity Assessment**

Petitioner argues that the AJL's RFC assessment is wrong because the ALJ improperly rejected Dr. Hansen's RFC assessment in favor of an examining physician's

assessment, chose to selectively credit Mr. Harvey's testimony although he found him not credible, relied upon Mr. Harvey's inability to afford medical care, and finally because the ALJ failed to include cognitive deficits in his RFC analysis. Each aspect will be discussed in turn.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities.  *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

In this case, the ALJ largely chose to accept the RFC analysis performed on October 4, 2007, by  Dr. Dickey, a non-examining physician, (AR 368–375), over the RFC analysis completed by treating physician Dr. Hansen on February 13, 2008 (AR 461–472.) Relying upon Dr. Dickey's RFC assessment and Mr. Harvey's testimony, the ALJ determined that Mr. Harvey had the RFC to alternate sitting, walking and standing throughout an eight hour day, walk for one-quarter mile, stand for 30 minutes, and sit for one to two hours. As for reaching and lifting, the ALJ found Mr. Harvey could lift twenty pounds occasionally and ten pounds frequently, but could not reach overhead with his left arm. Mr. Harvey was prohibited from crawling or climbing using his upper extremities, and he could occasionally perform other climbing, balance, stoop, kneel, and crouching activities. (AR 15, 67–68.) Based upon the ALJ's RFC determination, the vocational

**MEMORANDUM DECISION AND ORDER - 16**

expert opined that Mr. Harvey could perform his past relevant work as a customer service representative.

The ALJ's RFC determination largely corresponds to Dr. Dickey's determination, except that Dr. Dickey limited Mr. Harvey to lifting a maximum of ten pounds, and was of the opinion that there were no limitations in Mr. Harvey's ability to reach overhead. Dr. Hansen, on the other hand, documented Mr. Harvey's limited use of his upper extremities, and believed Mr. Harvey could not stand or walk the requisite number of hours in an eight hour work day and could never climb, balance, stoop, crouch, kneel or crawl because of his left leg weakness and obesity. Petitioner argues that the ALJ selectively chose which aspects of Mr. Harvey's testimony to believe, although he considered him not credible in other aspects, and improperly rejected Dr. Hansen's RFC determination, which would have precluded all work.

With respect to Mr. Harvey's credibility, the ALJ found him not credible regarding the severity, intensity, and limiting effects of his pain, particularly regarding his lower back and his testimony where he indicated he needed to sit with his legs elevated for six hours each day. However, the ALJ believed Mr. Harvey concerning his testimony that he could lift more than ten pounds on an occasional basis. (AR 67.) The ALJ's decision to reject Mr. Harvey's testimony regarding his need to sit for more than six hours is not inconsistent, however, with his decision to accept his testimony about his ability to lift more than ten pounds. Petitioner has not cited any rule requiring the ALJ to reject Mr.

**MEMORANDUM DECISION AND ORDER - 17**

Harvey's testimony entirely, only those portions which the ALJ finds not credible and which are unsupported by substantial evidence. Mr. Harvey testified that, although he was "sore" afterwards, he lifted a lawnmower out of his truck, shoveled snow, and he believed he could lift thirty pounds if he had to. Mr. Harvey was engaged in resistance training as part of his physical therapy program for rehabilitation of his shoulder. (AR 500.) Accordingly, the ALJ properly accepted Mr. Harvey's testimony about his lifting capabilities, as there was substantial evidence in the record to support that conclusion, while rejecting his testimony about his other functional limitations as discussed above.

The ALJ largely rejected Dr. Hansen's opinions, presenting specific and legitimate reasons for doing so that are supported by substantial evidence in the record. Dr. Hansen's opinions regarding Mr. Harvey's RFC were contradicted by Dr. Dickey's assessment and Mr. Harvey's own testimony at the hearing. In addition, as discussed above, Mr. Harvey described activities inconsistent with his testimony at the hearing. Specifically, the ALJ rejected Mr. Harvey's testimony about his need to sit with his legs elevated for six hours a day, finding no doctor ever suggested that and instead recommended more exercise rather than less.

Petitioner also takes issue with the ALJ's determination to reject Dr. Hansen's opinion because Mr. Harvey received no medical treatment for his back condition for over one year after Dr. Hansen's assessment. (AR 17.) Petitioner argues that lack of funds to continue with medical treatment is not a sufficient reason for discrediting testimony.

**MEMORANDUM DECISION AND ORDER - 18**

Mr. Harvey testified that he no longer had insurance after his wife retired, and therefore could not afford to continue with physical therapy. (AR 35.) He also testified he had not been to a doctor since November of 2007 because he could not afford to. (AR 37.) Generally, it is improper to reject a petitioner's complains for lack of treatment when the record establishes that the claimant cannot afford it. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

However, there is substantial evidence in the record to support the ALJ's reliance on lack of treatment. Mr. Harvey may have lacked insurance coverage and the funds to pay for care. Nevertheless, when his shoulder began hurting him, he sought treatment for it in February of 2008, with no mention of his back pain for which he had previously received treatment. (AR 484–504.) It was not until May 5, 2009, that Mr. Harvey sought treatment for his back from Dr. Hansen. (AR 473.) Therefore, it was not error for the ALJ to rely upon the lack of treatment for Mr. Harvey's back pain, because the treatment records indicated Mr. Harvey sought treatment for ailments other than his back pain since November of 2007 and did not complain about his back pain until May of 2009.

Finally, Petitioner argues it was error to reject Mr. Harvey's testimony regarding his cognitive function and fail to include it in the RFC analysis. Petitioner argues it was error for the ALJ to rely upon Dr. Starr's cognitive function report dated August 9, 2007, which was prior to Mr. Harvey's amended onset date of September 1, 2007, and that it was reasonable to conclude that medications did in fact impair Mr. Harvey's cognitive

**MEMORANDUM DECISION AND ORDER - 19**

function after his herniated disk injury. (AR 299; Pet. Brief at 17, Dkt. 12.) However, the

ALJ cited Dr. Starr's report only in connection with his assessment that any mental

impairment was not "severe" at step two. (AR 14.) Petitioner does not contest that any

error was made at step two of the ALJ's determination. Rather, the ALJ rejected Mr.

Harvey's testimony concerning his cognitive deficits due to medication because Mr.

Harvey never complained of such problems to his physicians at any time after his

herniated disk injury in September of 2007. (AR 16.) Mr. Harvey never asked for

alternative drug therapy after his injury, and did not complain to his treating physician,

Dr. Hansen, that his medications were impairing him in any way. Other than his testimony

that he was forgetful and had to be reminded of things, (AR 38–39, 44) Mr. Harvey

otherwise produced no clinical evidence showing that narcotics use impaired his ability to

work. Accordingly, the ALJ properly rejected Mr. Harvey's testimony and it was not error

for the ALJ to fail to include such impairments in his RFC assessment.

The Court therefore finds that the ALJ did not err in his RFC analysis. The ALJ

properly rejected Dr. Hansen's opinions citing specific and legitimate reasons for doing

so that were supported by substantial evidence in the record. Nor did the ALJ err with

respect to rejecting portions of Mr. Harvey's testimony in support of his RFC

determination, considering the record supported some of Mr. Harvey's complaints but not

others. The ALJ was not compelled to find Mr. Harvey less than fully credible in all

aspects of his testimony, only those aspects that were not supported by substantial

**MEMORANDUM DECISION AND ORDER - 20**

evidence in the record.

**4.      Step Four, Past Relevant Work**

At the fourth step in the sequential process, the ALJ determines whether the

impairment prevents the claimant from performing work which the claimant performed in

the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate

the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv);

416.920(a)(4)(iv).  A claimant's residual functional capacity is the most he can do despite

his limitations.  20 C.F.R. § 404.1545(a).  An ALJ considers all relevant evidence in the

record when making this determination. *Id*. Generally, an ALJ may rely on vocational

expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th

Cir. 2005).  An ALJ must include all limitations supported by substantial evidence in his

hypothetical question to the vocational expert, but may exclude unsupported limitations.

*Bayliss*, 427 F.3d at 1217. The ALJ  need not consider or include alleged impairments

that have no support in the record.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th

Cir. 2000).

As discussed above, the ALJ did not commit error in finding Mr. Harvey less than

credible, and included all of Mr. Harvey's limitations in his RFC analysis that were

supported by substantial evidence in the record. The ALJ largely relied upon the portions

of Mr. Harvey's testimony that were credible, the medical records, and Dr. Dickey's RFC

analysis. The vocational expert was of the opinion that Mr. Harvey could perform his past

relevant work as a customer service representative.

Petitioner argues that Mr. Harvey could not perform his past relevant work as a customer service representative because it required higher level reasoning and math skills, which would be impaired by his pain and pain medications. (Pet. Brief at 17-18.) However, as discussed above, the ALJ properly rejected Mr. Harvey's testimony about the limiting effects of his pain and cognitive difficulties as a result of his pain medication. Therefore, the ALJ did not commit error at step four, and his finding that Mr. Harvey could perform his past relevant work will be affirmed.

## CONCLUSION

Based upon the discussion herein, the Court concludes that the ALJ's finding that Claimant Leonard Harvey was not disabled was not the product of legal error, and was supported by substantial evidence in the record. The Commissioner's findings will be affirmed.

**MEMORANDUM DECISION AND ORDER - 22**

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     The Commissioner's decision finding that the Petitioner is not disabled

within the meaning of the Social Security Act is **AFFIRMED.**

2)     The Petition for Review (Dkt. 1) is **DISMISSED**.



DATED: September 19, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**